## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|                                               |     |                                  |
| --------------------------------------------- | --- | -------------------------------- |
| FEDERAL TRADE COMMISSION,                     | )   |                                  |
|                                               | )   |                                  |
| Plaintiff,                                    | )   |                                  |
|                                               | )   |                                  |
| v.                                            | )   | Case No.  03 C 3578              |
|                                               | )   |                                  |
| QT, INC., Q-RAY, COMPANY,                     | )   | Magistrate Judge Morton Denlow   |
| BIO-METAL, INC., QUE TE PARK,                 | )   |                                  |
| a.k.a. ANDREW Q. PARK,                        | )   |                                  |
| and JUNG JOO PARK,                            | )   |                                  |
|                                               | )   |                                  |
| Defendants.                                   | )   |                                  |

### FINAL JUDGMENT ORDER

On May 27, 2003, Plaintiff, the Federal Trade Commission ("FTC" or "Commission"),
filed a Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") against
QT, Inc., Q-Ray, Company, Bio-Metal, Inc., Que Te Park, a.k.a. Andrew Q. Park, and Jung Joo
Park, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.
§ 53(b), alleging that they had engaged in deceptive acts or practices and false advertising in
violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

The Court conducted a seven-day bench trial between June 6 and July 11, 2006.  On
September 8, 2006, the Court issued a Memorandum Opinion and Order ("Memorandum
Opinion") finding that defendants Que Te Park, QT, Inc., Q-Ray, Company, and Bio-Metal, Inc.
(collectively, "Defendants"), during the time period January 1, 2000 to June 30, 2003,  violated
Sections 5(a) and 12 of the FTC Act.  In its Memorandum Opinion, the Court stated that it would
enter final judgment against Defendants at a later date.  The Court also held in the Memorandum
Opinion that Jung Joo Park had not committed a violation of the FTC Act and the Court stated

that it would enter final judgment for Jung Joo Park and against the FTC at a later date. Based

on the record established in this case, and for the reasons set forth in the Court's Memorandum

Opinion, the Court enters this Final Judgment Order.

1.      Judgment is entered for the FTC and against Defendants as to Count I of the FTC's
complaint.

2.      Judgment is entered for the FTC and against Defendants as to Count II of the FTC's
complaint.

3.      Judgment is entered for the FTC and against Defendants as to Count III of the FTC's
complaint.

4.      Judgment is entered for Jung Joo Park and against the FTC as to Count I of the FTC's
complaint.

5.      Judgment is entered for Jung Joo Park and against the FTC as to Count II of the FTC's
complaint.

6.      Judgment is entered for Jung Joo Park and against the FTC as to Count III of the FTC's
complaint.

7.      Consistent with this Order, the Court orders equitable relief against Defendants in the
form of consumer redress, disgorgement, and restitution.

8.      The FTC has established a basis for permanent injunctive relief against Defendants.

9.      Pursuant to Federal Rule of Civil Procedure 65(d), the injunctive provisions of this Order

are binding upon Defendants, and their officers, agents, servants, employees, and all other

persons or entities in active concert or participation with them, who receive actual notice of this

Order by personal service or otherwise.

## **DEFINITIONS**

For the purposes of this Order, the following definitions shall apply:

1.      "Advertising" or "advertisement" means any written or verbal statement, illustration, or depiction that is designed to effect a sale or create interest in the purchasing of goods or services, whether it appears in or on a brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, packaging, package insert, label, film, slide, radio, television or cable television, audio program transmitted over a telephone system, program-length commercial ("infomercial"), the Internet, email, or any other medium.

2.      "Asset" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), shares of stock, funds, and all cash, wherever located.

3.      "Assisting others" means providing any of the following services to any person or entity: (a) performing customer service functions for any person or entity, including, but not limited to, receiving or responding to consumer complaints; (b) formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material for any person or entity, including but not limited to, Web site and commercial electronic message content; or (c) performing advertising, marketing, or consulting services of any kind for any person or entity.

4.      "Clearly and prominently" means that information presented is: (a) unavoidable; (b) in print of a size and shade sufficient for an ordinary consumer to read and comprehend it; and (c)

3

in understandable language and syntax.

5.      "Competent and reliable scientific evidence" means tests, analyses, research, studies, or

other evidence based on the expertise of professionals in the relevant area, that have been

conducted and evaluated in an objective manner by persons qualified to do so, using procedures

generally accepted in the profession to yield accurate and reliable results.

6.      "Consumer Database" means a customer list containing the name, address, email address,

and any other contact information for, and the number and cost of each Q-Ray Ionized Bracelet

purchased by, each Eligible Purchaser of a Q-Ray Ionized Bracelet.

7.      "Covered product" means any drug, device, or other product purporting to provide

health-related benefits, including but not limited to, Q-Ray Ionized Bracelets, Q-Ray Ionized

Pendants, Ion-Ray Ionized Sunglasses, Q-Ray Ionized Rings, or any other "ionized" product.

8.      "Defendants" means:

> (a)      Que Te Park, a.k.a. Andrew Q. Park, individually and in his capacity as an officer
>
> of any defendant corporation; and

> (b)       QT, Inc., Q-Ray, Company, and Bio-Metal, Inc., their divisions and subsidiaries,
>
> and their successors and assigns.

9.      "Eligible Purchaser" means any consumer who purchased a Q-Ray Ionized Bracelet,

between January 1, 2000 and June 30, 2003 directly from Defendants, declares himself or herself

to have been dissatisfied with the Q-Ray Ionized Bracelet, and has not previously received a

refund or chargeback for the total purchase cost.

10.     "Estimated Redress Total" means the total amount of redress requested by Participating

Purchasers, plus the reasonably anticipated costs of refund administration, plus thirty percent

4

(30%) of the estimated costs in order to account for any unanticipated cost over-runs; provided

that the amount shall not exceed $87,019,840.

11.     "Drug" and "device" have the meanings set forth in Section 15 of the FTC Act, 15 U.S.C.

§ 55.

12.     "Pain-relief product" means any product or device that is advertised, marketed,

promoted, offered for sale, distributed, or sold with express or implied representations that the

product will relieve musculoskeletal or other pain.

13.     "Participating Purchaser" means any Eligible Purchaser who has requested a refund

pursuant to the terms of the redress program administered pursuant to this Order.

14.     "Q-Ray Ionized Bracelet" means any style or model of product marketed to consumers

by Defendants as an "ionized" bracelet, including, but not limited to, any Q-Ray Ionized

Bracelet, any Q-153 Bracelet, and any T-153 Bracelet.

15.     A requirement that any defendant "notify," "furnish," "provide," or "submit" to the

Commission means that the Defendant shall send the necessary information via first class mail,

costs prepaid, or via overnight carrier, to:

> Associate Director for Enforcement
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W.
> Washington D.C.  20580
> Attn: *FTC v. QT Inc., et al.*

*Provided, however,* that the information required to be furnished to the Commission pursuant to

Paragraphs VII.A and VIII.A shall be sent to the Associate Director for Advertising Practices at

the address above.

16.     The terms "and" and "or" in this Order shall be construed conjunctively or disjunctively,

5

as necessary, to make the applicable sentence or phrase inclusive, rather than exclusive.

17.    The term "including" shall mean "including without limitation."

## PROHIBITED REPRESENTATIONS

### I.

**IT IS HEREBY ORDERED** that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with them who receive actual notice of this Order by personal service, or otherwise, ("Affected Parties") in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of the Q-Ray Ionized Bracelet or any pain-relief product, in or affecting commerce, are hereby permanently restrained and enjoined from making, or assisting others in making, directly or by implication, including through the use of endorsements or the product name, any misrepresentation:

    A.       that the Q-Ray Ionized Bracelet or any pain-relief product provides relief from pain, including, but not limited to, musculoskeletal pain, sciatic pain, persistent headaches, sinus problems, tendinitis, or injuries, or

    B.       about the absolute or comparative health benefits, performance, or efficacy of the Q-Ray Ionized Bracelet or any pain-relief product.

### II.

**IT IS FURTHER ORDERED** that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with them who receive

actual notice of this Order by personal service or otherwise, in connection with the

manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any

covered product, are hereby permanently restrained and enjoined from making, or assisting

others in making, any representation, in any manner, expressly or by implication, including

through the use of endorsements or the product name, about the absolute or comparative health

benefits, performance, efficacy, or safety of any covered product, in or affecting commerce,

unless the representation is true, non-misleading, and at the time the representation is made,

Defendants possess and rely upon competent and reliable scientific evidence that substantiates

the representation.

### III.

**IT IS FURTHER ORDERED** that Defendants, directly or through any corporation,

partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants,

employees, and all persons and entities in active concert or participation with them who receive

actual notice of this Order by personal service or otherwise, in connection with the

manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any

covered product, in or affecting commerce, are hereby permanently restrained and enjoined from

misrepresenting, in any manner, expressly or by implication, including through the use of

endorsements or the product name, the existence, contents, validity, results, conclusions, or

interpretations of any test or study.

### IV.

**IT IS FURTHER ORDERED** that Defendants, directly or through any corporation,

partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants,

7

employees, and all persons and entities in active concert or participation with them who receive

actual notice of this Order by personal service or otherwise, in connection with the

manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any

covered product, in or affecting commerce, are hereby permanently restrained and enjoined from

misrepresenting, in any manner, expressly or by implication, any aspect of a refund or guarantee

policy, and from failing to clearly and prominently disclose all terms and conditions of any

refund or guarantee policy prior to completing any sale.

## ASSET RESTRICTION

## V.

**IT IS FURTHER ORDERED** that the assets restricted pursuant to the Stipulated Order

for Preliminary Injunction with Asset Transfer Restrictions and Other Equitable Relief entered

on June 11, 2003 by this Court ("Preliminary Injunction"), which are listed in Paragraph 4 of

Attachment A hereto (filed under seal), shall remain frozen pursuant to Paragraphs III and IV of

the Preliminary Injunction, which are incorporated herein by reference, pending Defendants'

compliance with the conditions of monetary judgment and redress program set forth in

Paragraphs VI, VII, VIII and IX of this Order; *provided, however,* that those assets listed in

Paragraph 5 of Attachment A shall no longer be subject to the asset restriction imposed by the

Preliminary Injunction; and *provided further* that as provided for in Paragraph XII of this Order,

or upon written notice by the Commission, any asset remaining frozen pursuant to the

Preliminary Injunction may be transferred directly to the Commission pursuant to Paragraph VII,

subparagraphs A.1 through A.4 of this Order.  Upon motion of any party and upon order of the

Court, the asset restriction on any remaining assets listed in Paragraph 4 of Attachment A may

be lifted.

## MONETARY JUDGMENT AND CONSUMER REDRESS

## VI.

**IT IS FURTHER ORDERED** that:

A.    Judgment on Counts I, II, and III of the Commission's Complaint is hereby entered against Defendants QT, Inc., Q-Ray, Company, Bio-Metal, Inc., and Que Te Park, jointly and severally, in the amount of Eighty-Seven Million, Nineteen Thousand, Eight Hundred Forty Dollars ($87,019,840), plus pre-judgment interest at the legal rate as set forth in Paragraph IX below; *provided, however*, that this judgment shall be deemed to be fully satisfied upon Defendants' full compliance with the conditions set forth in Paragraphs VII, VIII, and IX of this Order; and

B.    Judgment on Counts I, II, and III of the Commission's Complaint is hereby entered in favor of Jung Joo Park.  This Judgment in favor of Jung Joo Park does not waive her right to seek, under the Equal Access to Justice Act, 28 U.S.C. § 2412, reimbursement of attorneys' fees and costs.

## FUNDING OF REDRESS PROGRAM BY DEFENDANTS

## VII.

**IT IS FURTHER ORDERED** that Defendants shall provide funding for the redress program and its administration pursuant to this Paragraph VII, as set forth below:

A.    <u>Disgorgement Sources</u>.  Defendants shall transfer Twenty-Two Million, Five Hundred Thousand Dollars ($22,500,000), plus pre-judgment interest on that amount in the amount of $4,604,913.32 as calculated pursuant to Section IX of this Order, to the Commission

9

within fourteen (14) days after the date of entry of this Order, by taking the following steps:

1.    Transfer to the Commission the assets listed in Paragraph 1 of Attachment A (filed under seal);

2.    Assign to the Commission all rights and interest, whether whole or partial, choate or inchoate, to or in any amounts due any Defendant under any loan or note receivable, including but not limited to those amounts listed in Paragraph 2 of Attachment A;

3.    In the event that the amount of funds referenced in subparagraphs A.1 and A.2 of this Paragraph VII is less than the sum of Twenty-Two Million, Five Hundred Thousand Dollars ($22,500,000) plus $4,604,913.32 in pre-judgment interest, transfer to the Commission any additional assets of Defendants' choosing such that the sum of the transfers to the Commission referenced in subparagraphs A.1, A.2, and A.3 equals the sum of Twenty-Two Million, Five Hundred Thousand Dollars ($22,500,000) plus $4,604,913.32 in pre-judgment interest;

4.    *Provided that*, in the event that the amount of funds referenced in subparagraphs A.1, A.2 and A.3 of this Paragraph VII is less than the sum of Twenty-Two Million, Five Hundred Thousand Dollars ($22,500,000) plus $4,604,913.32 in pre-judgment interest:

a.    Defendants shall provide to the Commission an accounting of all assets outside the United States held, jointly or individually, (a) by any of the Defendants, (b) for the benefit of any of the Defendants,

10

or (c) under the direct or indirect control of any of the Defendants, and shall repatriate and turn over sufficient assets, within thirty-five (35) days after the date of entry of this Order, to the Commission such that the sum of the transfers in subparagraphs A.1 through A.4 equals Twenty-Two Million, Five Hundred Thousand Dollars ($22,500,000) plus $4,604,913.32 in pre-judgment interest.  The assets so turned over shall include, but not be limited to, any right, title, or interest, whether whole or partial, choate or inchoate, to or in the foreign assets listed in Paragraph 3 of Attachment A (filed under seal) and all proceeds from the sale in the United States of the Q-Ray Ionized Bracelet; and

b.  the Commission may seek entry of additional Orders to ensure that Defendants transfer to the Commission the required sum of Twenty-Two Million, Five Hundred Thousand Dollars ($22,500,000) plus $4,604,913.32 in pre-judgment interest.

B.  <u>Redress Sources</u>.  Defendants shall grant to the Commission liens on and security interests in, or other interests in, assets held jointly or individually, (a) by any of the Defendants; (b) for the benefit of any of the Defendants; or (c) under the direct or indirect control of any of the Defendants, with a total value of Sixty-four Million, Five Hundred Nineteen Thousand, Eight Hundred Forty Dollars ($64,519,840) (collectively, the "Collateral") within twenty-one (21) days after the date of entry of this Order by taking the following steps:

1.  Defendants represent and acknowledge that the Commission is relying on

11

the material representations that the Defendants are the joint or sole

owners in fee simple of the Collateral; that title to the Collateral is

marketable; and that the Collateral currently is not encumbered by any

other lien, mortgage, deed of trust, assignment, pledge, or security interest.

2.      Defendants further agree that as of the date of entry of this Order, they

shall refrain from transferring, converting, encumbering, selling,

assigning, or otherwise disposing of the Collateral, except with the express

prior written permission of counsel for the Commission.

3.      Defendants shall cooperate fully with the Commission and be responsible

(at their sole expense) for preparing, executing, and recording the

necessary instruments and documents, including financing statements and

continuation statements, and performing whatever other action the

Commission deems necessary or desirable to perfect, evidence, and

continue its lien on the Collateral, and for paying all related fees and costs,

including attorneys' fees and filing fees.  Defendants shall prepare (at their

sole expense), execute, and deliver to the Commission mortgages, security

agreements, UCC-1 Financing Statements, and other documents in form

and substance satisfactory to the Commission, record such documents (at

their sole expense), and take such other steps as the Commission deems

necessary or desirable to perfect and evidence its lien on the Collateral and

to carry out the purposes of this Final Judgment and Order.

C.      Disposition of Funds.

12

1.     The FTC, or its Redress Administrator, shall pay the funds referenced in

subparagraph A of this Paragraph VII into a Redress Account to be used to

pay redress to Participating Purchasers and the costs for administration of

the redress program.  If, after the completion of the claims process in

subparagraph D of Paragraph VIII, the amount of complete redress

payments to Participating Purchasers plus the costs of administration for

the redress program is less than the funds in the Redress Account, then

any remaining funds shall be deposited as equitable disgorgement into the

U.S. Treasury.

2.     In the event that the Estimated Redress Total exceeds the amount of funds

in the Redress Account referenced in subparagraph C.1 of this Paragraph

VII, the FTC shall make a demand upon Defendants for the difference.  If

Defendants do not provide such funds within twenty-one (21) days of such

demand, the FTC shall exercise the liens and/or security interests

referenced in subparagraph B.

3.     Upon Defendants' satisfaction of the Commission's demand as set forth

above in subparagraph C.2, the Commission will release any and all

remaining liens and security interests granted herein.  Defendants shall be

responsible for preparing and filing (at their sole expense) any termination

or other statements reasonably required in connection therewith.

Defendants shall be responsible for paying all fees and costs relating to the

preparation, execution, delivery, filing, recording, continuation and

13

termination of the lien granted herein, including filing fees.

4.      In the event that the Estimated Redress Total exceeds Twenty-Two

Million, Five Hundred Thousand Dollars ($22,500,000), the Commission

shall, at the completion of the redress program and payment of all related

costs, return to Defendants any excess funds remaining in the Redress

Account.

D.      The payments made pursuant to this Paragraph VII represent redress and are

intended to be compensatory in nature, and no portion of such payment shall be deemed a

payment of any fine, penalty, or punitive assessment.

## REDRESS PROGRAM PROCEDURES

## VIII.

**IT IS FURTHER ORDERED** that Defendants shall provide redress to Eligible

Purchasers in accordance with the provisions of this Paragraph:

A.      Within fourteen (14) days after entry of this Order, Defendants shall provide the

Consumer Database to the Commission.  This Consumer Database shall be provided in the form

of a searchable electronic document formatted in Word, Word Perfect, Excel, or Access, and

supplied on a CD-R74 CD-ROM readable disks formatted to ISO 9660 specifications (650 MB

capacity).

B.      The redress program shall be administered by a Redress Administrator selected by

the FTC.  Defendants shall have no right to contest the FTC's selection of the Redress

Administrator.  The Consumer Database will be provided by the FTC to the Redress

Administrator.  The Redress Administrator, acting under the supervision of the FTC, may

14

request additional information, as needed, from Eligible Purchasers and persons who claim to be

Eligible Purchasers to determine the validity of such purchasers' redress claims.

       D.       Redress Eligibility Notices substantially in the form set forth in Attachment C,

containing the Claim Form substantially in the form set forth in Attachment D, shall be issued to

Eligible Purchasers of Q-Ray Ionized Bracelets by the Redress Administrator.  Eligible

Purchasers who return signed Claim Forms within forty-five (45) days after the time set forth on

the Redress Eligibility Notice are Participating Purchasers who shall be paid a refund based upon

their payments for Q-Ray Ionized Bracelets.

       E.       Within twenty-one (21) days after the final date for the return of Claim Forms by

Participating Purchasers as set forth in subparagraph D of this Paragraph VIII, the FTC will

calculate the Estimated Redress Total.

## PRE-JUDGMENT INTEREST

## IX.

       **IT IS FURTHER ORDERED** that the Commission is entitled to pre-judgment interest

on the Twenty-Two Million, Five Hundred Thousand Dollars ($22,500,000) that Defendants are

to transfer to the Commission or its agent pursuant to Paragraph VII of this Order.  The pre-

judgment interest on that amount is $4,604,913.32.  This amount was arrived at by calculating

interest on the $22,500,000 figure for the forty-month period July 2003 through October 2006,

compounded annually.  The interest rate used for each annual period (*i.e.*, July 2003-June 2004,

July 2004-June 2005, and July 2005-June 2006) is the average of the annual bank prime rates in

effect for each of the twelve months in that period.  (All annual rates in effect for the months in

question are taken from Federal Reserve data found at

15

http://www.federalreserve.gov/releases/h15/data.htm.)  The interest rate used for the four-month

period July 2006-October 2006 is the average of the annual prime rates in effect for each of the

four months in that period, divided by three to reflect that this period is only one-third of a year.

The interest rates used were:

| Period | Rate |
|--------|------|
| July 2003-June 2004 | 4.00% |
| July 2004-June 2005 | 5.18% |
| July 2005-June 2006 | 7.18% |
| July 2006-October 2006 | 2.75% |

The Commission also will be entitled to pre-judgment interest on any additional amounts

up to a total of Eighty-Seven Million, Nineteen Thousand, Eight Hundred Forty Dollars

($87,019,840) that are necessary to pay complete redress payments to Participating Purchasers

and cover the costs of administration for the redress program.  The pre-judgment interest for all

amounts will be calculated using the above methodology for the period from July 1, 2003

through October 31, 2006.

## ACCOUNTING

## X.

**IT IS FURTHER ORDERED** that Defendants shall, within seven (7) days of entry of

this Order, provide the Commission with an up-to-date accounting of all assets held, controlled,

or maintained by, on behalf of, or for the benefit of, in whole or in part, any of the Defendants.

Such accounting shall include a list of all such assets and their value, and shall include but not be

limited to a list of all cash, bank accounts, money market accounts, securities, and deferred

income arrangements (such as 401(k) plans and IRAs).  Such listing also shall indicate the nature

of the Defendant's interest, the ownership structure of each asset (e.g. whether such asset is

owned jointly) and the name and contact information of any other Person that has or asserts an

interest in such asset.

## DISCOVERY

## XI.

**IT IS FURTHER ORDERED** that fourteen (14) days after entry of this Order, the

Commission, in accordance with Rule 69 of the Federal Rules of Civil Procedure, may conduct

discovery in the manner provided by the Federal Rules of Civil Procedure, or in the manner

provided by the practice of the state of Illinois, in aid of this judgment and execution thereof.

Such permissible discovery includes, but is not limited to, the deposition of any Defendant or

employee thereof.

## DUTIES OF THIRD PARTIES

## XII.

**IT IS FURTHER ORDERED** that, in order to partially satisfy the monetary judgment

set forth in Paragraph VI above and to implement the funding of the redress program as set forth

in Paragraph VII above, Defendants shall serve a copy of Paragraphs V, VI, and XII of this

Order, along with the first two pages and the signature page of this Order, upon any law firm,

financial or brokerage institution, escrow agent, title company, commodity trading company,

supplier, distributor, manufacturer, business entity, or person, whether located within the United

States or outside the United States, that holds, controls, or maintains accounts or assets of, on

behalf of, or for the benefit of, any of the Defendants.  All parties receiving a copy of these

portions of this Order pursuant to this Paragraph XII shall turn over any such account or asset to

the Commission within fourteen (14) days of receiving Defendants' request to do so.

## RETENTION OF CUSTOMER RECORDS

## XIII.

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys and all other persons or entities who receive actual notice of this Order by personal service or otherwise, are required to retain, for a period of five (5) years, all records relating to any Eligible Purchaser, including but not limited to any records or receipts that contain the name, address, telephone number, email address, or other identifying information of any such person.

## PETITION FOR ATTORNEYS' FEES AND COSTS

## XIV.

IT IS FURTHER ORDERED that the Court reserves the right to permit, if allowed by law, some of the restricted assets, including those assets listed in Paragraph 1 on Exhibit A of this Order, to be used to pay Defendants' reasonable attorneys fees and costs incurred in connection with the defense of this matter (up to one million, three hundred thousand dollars [$1,300,000.00]). Within seven (7) days from the date of entry of this Order, Defendants shall file an up-to-date petition identifying the reasonable attorneys' fees and costs incurred in this matter. Defendants may redact their submission to remove reference to privileged or work product materials and shall submit any privileged or work product materials to the Court for in camera inspection, as deemed necessary by the Court. The Commission shall have fourteen (14) days from the filing and service of Defendants' petition to respond, and Defendants shall have seven (7) days thereafter to file a reply; the Court may enter a supplemental order concerning attorneys' fees and costs incurred in this matter.

## NOTICE TO RESELLERS, AFFILIATES AND DISTRIBUTORS

## XV.

**IT IS FURTHER ORDERED** that Defendants shall:

A.      Send, within twenty-one (21) days of the date of entry of this Order, by first class mail, postage prepaid and return receipt requested, an exact copy of the notice attached hereto as Attachment B, showing the date of mailing, to each current distributor, affiliate, or reseller of any Covered Product who sells or offers a Covered Product for sale in the United States.  This mailing shall not include any other document or enclosures other than Attachment B.

B.      For a period of one (1) year following the date of entry of this Final Judgment Order, send by first class mail, postage prepaid and return receipt requested, an exact copy of the notice attached hereto as Attachment B, showing the date of mailing, to each distributor, affiliate, or reseller of any covered product with whom they begin to do business after the date of entry of this Final Judgment Order who has not previously received the notice.  This mailing shall not include any other document or enclosures other than Attachment B.  Defendants shall send such notice prior to any sale or distribution of any such distributor, affiliate, or reseller.

C.      Terminate any distributor, affiliate, or reseller within ten (10) days after Defendants become aware that the distributor, affiliate, or reseller has continued to use, after having provided fourteen (14) days' notice and opportunity to cure, any advertisement, packaging, or labeling that contains any representation prohibited by this Order.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

19

## XVI.

**IT IS FURTHER ORDERED** that, within seven (7) business days of the date of entry of this Order, each Defendant shall submit to the Commission a truthful sworn statement, substantially in the form set forth in Attachment E, that shall acknowledge receipt of this Order.

## DISTRIBUTION OF ORDER

## XVII.

**IT IS FURTHER ORDERED** that Defendants QT, Inc., Q-Ray, Company, and Bio-Metal, Inc., and any business located, incorporated, or doing business in any State, Commonwealth, territory, or area of the United States where (1) Defendant Que Te Park owns at least fifty percent (50%) of the business or directly or indirectly manages or controls the business, and (2) the business is engaged in the advertising, marketing, promotion, offering for sale, distribution, or sale of any covered product, shall:

A.      Within twenty-eight (28) days after the date of entry of this Order, deliver a copy of this Order to, and obtain a signed and dated acknowledgment of receipt of same from, each of their current principals, officers, and directors, and all current managers, employees, representatives, and agents having responsibilities with respect to the subject matter of this Order, *provided that* Defendants may delete Paragraphs V through X, Paragraph XIV, and Attachment A from the Order;

B.      For a period of five (5) years from the date of entry of this Order, provide a copy of this Order to, and obtain a signed and dated acknowledgment of receipt of same from, each of their future principals, officers, and directors, and all future managers, employees, representatives, and agents having responsibilities with respect to the subject matter of this

Order, within twenty-eight (28) days after the person assumes such responsibilities, *provided that* Defendants may delete Paragraphs V through X, Paragraph XIV, and Attachment A from the Order; and

C.    Maintain for a period of five (5) years after creation, and upon reasonable notice make available to representatives of the Commission, the original signed and dated acknowledgments of the receipt of copies of this Order, as required in subparagraphs A and B of this Paragraph.

**COMMISSION'S AUTHORITY TO MONITOR COMPLIANCE**

**XVIII.**

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order, the Commission is authorized to monitor Defendants' compliance with this Order by all other lawful means, including but not limited to the following:

1.    obtaining discovery from any person, without further leave of court, using the procedures proscribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45; and

2.    posing as consumers and suppliers to Defendants, Defendants' employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice; *Provided* that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible

21

things, testimony, or information relevant to unfair or deceptive acts or

practices in or affecting commerce (within the meaning of 15 U.S.C. §

45(a)(1)).

## COMPLIANCE REPORTING

## XIX.

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this

Order may be monitored:

A.      Defendant Que Te Park, within seven (7) days after the date of entry of this

Order, shall notify the Commission in writing of (1) his residence address and mailing address;

(2) his home telephone number; (3) the name, address, and telephone number of his employer;

and (4) his place(s) of business.

B.      For a period of five (5) years from the date of entry of this Order,

1.      Defendant Que Te Park shall notify the Commission of the following:

(a)      Any changes in his residence address, mailing address, and/or

telephone numbers, within seven (7) days of the date of such

change;

(b)      Any changes in his employment status (including self-

employment) within seven (7) days of the date of such change.

Such notice shall include the name, address, and telephone number

of each entity or person that he is affiliated with, employed by, or

performs services for; a statement of the nature of the business;

and a statement of his duties and responsibilities in connection

22

with the business; and

(c)     Any changes in his name or use of any aliases or fictitious names.

2.     Defendants QT, Inc., Q-Ray, Company, and Bio-Metal, Inc. shall notify the Commission of any changes in corporate structure that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the corporate name or address, at least twenty-eight (28) days prior to such change, *provided* that, with respect to any proposed change in the corporation about which Defendants learn less than twenty-eight (28) days prior to the date such action is to take place, Defendants shall notify the Commission as soon as is practicable after obtaining such knowledge.

C.     Eighty-four (84) days (twelve weeks) after the date of entry of this Order, each Defendant shall provide a written report to the Commission, sworn to under penalty of perjury, setting forth in detail the manner and form in which such Defendant has complied and is complying with this Order.  This report shall include, but not be limited to, any changes required to be reported pursuant to subparagraph B above; and a copy of each acknowledgment of receipt of this Order obtained by each of the Defendants pursuant to Paragraph XVII.B of this Order.

**RECORD KEEPING PROVISIONS**

## XX.

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Defendants, if engaging or assisting others engaged in the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, in or affecting commerce, and any business located, incorporated, or doing business in any State, Commonwealth, territory, or area of the United States where (1) Que Te Park owns fifty percent (50%) of or is an officer or director of the business, or directly or indirectly manages or controls the business, and (2) the business engages, or assists others engaged in, the advertising, marketing, promotion, offering for sale, distribution or sale of any covered product, in or affecting commerce, and their agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.       Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.       Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.       Customer files containing the names, addresses, telephone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

24

D.      Complaints and refund requests (whether received directly, indirectly or through any third party), and any response to those complaints or requests;

E.      Copies of all advertisements, promotional materials, sales scripts, training materials, or other marketing materials utilized in the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any covered product, to the extent such information is prepared in the ordinary course of business;

F.      All materials that were relied upon in making any representations contained in the materials identified in subparagraph E, including all documents evidencing or referring to the accuracy of any claim therein or to the efficacy of any covered product, including, but not limited to, all tests, reports, studies, demonstrations, as well as all evidence that confirms, contradicts, qualifies, or calls into question the accuracy of such claims regarding the efficacy of such product; and

G.      Records accurately reflecting the name, address, and telephone number of each manufacturer or laboratory engaged in the development or creation of any testing obtained for the purpose of manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any covered product.

**RETENTION OF JURISDICTION**

## XXI.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

_Morton    Denlow_
_____    **Dated:    November 13, 2006**
**HON. MORTON DENLOW**

**Copies mailed to:**

| | |
|---|---|
| Theodore H. Hoppock | Michael A. Ficaro |
| Reille C. Montague | Ross E. Kimbarovsky |
| Heather Hippsley | Richard H. Tilghman |
| Janet M. Evans | UNGARETTI & HARRIS, LLP |
| Edward Glennon | 3500 Three First National Plaza |
| FEDERAL TRADE COMMISSION | 70 West Madison |
| 600 Pennsylvania Avenue, NW, NJ-3213 | Chicago, IL 60602-4283 |
| Washington, DC 20580 | |
| | Counsel for Defendants |
| Counsel for Plaintiff | |

CASE NO.  03CV3578                DOCUMENT NO. 211

**PAGES 27 and 28 ARE RESTRICTED**

## ATTACHMENT B

### (To be printed on Defendant's Letterhead)

## NOTICE TO RESELLERS, AFFILIATES, AND DISTRIBUTORS
## BY FIRST CLASS MAIL, RETURN RECEIPT REQUESTED

[date]

Dear [distributor, affiliate, or reseller]:

You are receiving this letter because you are a distributor, affiliate, or reseller of Q-Ray products. This letter is to inform you of the recently decided civil action brought by the Federal Trade Commission ("FTC") against QT, Inc., its owner Que Te Park, and other related entities (collectively, "QT") regarding their advertising for the Q-Ray Ionized Bracelet. Among other things, the Court has ordered QT to notify distributors, affiliates, and resellers of the Final Judgment Order resolving the matter FTC v. QT, Inc., et al..

On September 8, 2006, the Court concluded that advertisements for the Q-Ray Ionized Bracelet from January 1, 2000 to June 30, 2003 made the following false or unsubstantiated claims in violation of the FTC Act:

    a.     the Q-Ray Ionized Bracelet provides immediate significant or complete relief from various types of pain, including, but not limited to, musculoskeletal pain, sciatic pain, persistent headaches, sinus problems, tendinitis, or injuries; and

    b.     tests prove that the Q-Ray Bracelet relieves pain.

The Court's Final Judgment Order prohibits QT from making the claims set forth above and from making any other health benefit claims for its products without an adequate scientific basis. The Court ordered the company to direct its distributors, affiliates, and resellers to stop using or distributing advertisements, packaging, or promotional materials that would violate its Final Judgment Order.

This letter has been provided for your files. If you have any questions or if you want a copy of the Final Judgment Order, please contact [insert name and telephone number of contact representative].

_____
[Officer of Company]
QT, Inc.

## ATTACHMENT C

### IMPORTANT REFUND INFORMATION: REDRESS ELIGIBILITY NOTICE
Claims Administration Center
[address]

[date]
[customer name]
[control number]

Dear Customer:

As a result of an action brought by the Federal Trade Commission, you are eligible for a refund of the purchase price for each Q-Ray Ionized Bracelet that you purchased directly from QT, Inc. between January 1, 2000 and June 30, 2003 if you are dissatisfied with the product and you have not already received a refund for the total purchase cost. Information about the refund program is set forth below.

The Federal Trade Commission sued QT, Inc. and others in 2003, alleging that the defendants made false and deceptive advertising claims about the Q-Ray bracelet. On September 8, 2006, the Court ruled in the FTC's favor, finding among other things that the defendants' claims between January 1, 2000 through June 30, 2003, that the Q-Ray Ionized Bracelet relieves pain is deceptive. A copy of the Court's opinion in the case may be found at http://www.ftc.gov/opa/2006/09/qray.htm.

**To receive a refund payment, you must fill out the information required on the enclosed Claim Form, affirming your dissatisfaction with the Q-Ray Ionized Bracelet, and return it to the address above no later than [insert date 30 days after mailing]. You are not required to have proof of purchase.** If you request a refund by submitting the enclosed Claim Form, the claims administrator will mail a refund check to you. The amount of the refund to which you are entitled will be calculated automatically based on the purchase data contained in the company's database. The amount of any refund you actually receive, however, will depend on the amount of your purchase(s) during the applicable time period, and the number of consumers who decide to participate in this refund offer.

If you have any questions about this letter or about the refund program, please call the Claims Administration Center at the following toll-free number: 1-800-[insert number].

Again, to receive a redress payment, simply fill out the enclosed Claim Form, sign it, put it in an envelope, place a stamp on the envelope, and mail it to the address above.

Sincerely,
Claims Administration Center

We are the only Claims Administration Center authorized by the FTC to mail notices and claims forms and to process and refund claims in this settlement. You are not required to pay anything to receive a refund. If any other company or individual contacts you and requests that you send them money or information in return for a refund from QT, Inc., please call the Claims Administration Center immediately at the phone number above.

**PRIVACY ACT NOTICE:**

This information is being collected in order to provide refunds to eligible consumers in connection with the Final Judgment and Order entered in <u>FTC v. QT, Inc., *et al.*,</u> by the U.S. District Court for the Northern District of Illinois pursuant to 15 U.S.C. 53(b). In addition, this information may be disclosed for other purposes authorized by the Privacy Act, 15 U.S.C. 552a and 47 Fed. Reg. 32,622, including disclosure to other government agencies. Providing this information is voluntary. Failure to provide the requested information could delay processing or, in some cases, make it impossible for us to process your claim.

31

## ATTACHMENT D
## CLAIM FORM FOR ELIGIBLE PURCHASERS

[Consumer Name]
[Control Number]
[Mailing address]

I purchased one or more Q-Ray Ionized Bracelet(s) between January 1, 2000 and June 30, 2003. I was not satisfied with the Q-Ray Ionized Bracelet and have not received a refund for the purchase price of the bracelet(s).  Please send me a redress payment in connection with the Federal Court Order entered in the matter, FTC v. QT, Inc., et al.

I declare under the laws of the United States of America that the information in my request for a refund is true and correct to the best of my knowledge.

Signed: _____

Print Name: _____

Date: _____

Daytime Phone: _____

If the address above is incorrect, please print your correct address below:

Street Address: _____ Apt. No. _____

City, State, Zip:_____

**PRIVACY ACT NOTICE:**

**This information is being collected in order to provide refunds to eligible consumers in connection with the Final Judgment and Order entered in FTC v. QT, Inc., et al., by the U.S. District Court for the Northern District of Illinois pursuant to 15 U.S.C. 53(b).  In addition, this information may be disclosed for other purposes authorized by the Privacy Act, 15 U.S.C. 552a and 47 Fed. Reg. 32,622, including disclosure to other government agencies.  Providing this information is voluntary.  Failure to provide the requested information could delay processing or, in some cases, make it impossible for us to process your claim.**

ATTACHMENT E

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

_____
                                                    )
FEDERAL TRADE COMMISSION,                            )
                                                    )
                            Plaintiff,               )
                                                    )
                    v.                               )      Case No.  03 C 3578
                                                    )
QT, INC., Q-RAY, COMPANY,                            )      Magistrate Judge Morton Denlow
BIO-METAL, INC., QUE TE PARK,                        )
a.k.a. ANDREW Q. PARK,                               )
and JUNG JOO PARK,                                   )
                                                    )
                            Defendants.              )
_____)

**ACKNOWLEDGMENT OF ORDER**

_____, a defendant in *FTC v. QT, Inc., et al.,* Case No.  03 C 3578, (United

States District Court for the Northern District of Illinois), hereby acknowledges receipt of the

Final Order and Judgment for Permanent Injunction and Other Equitable Relief Against

Defendants QT, Inc., Q-Ray, Company, Bio-Metal, Inc., and Que Te Park, a.k.a. Andrew Q.

Park, which was signed by the Honorable Morton Denlow and entered by the Court.


                                        _____
                                        [Full name of Defendant]


                                        By:
                                        _____

33

[Name] and [Office]